**Betty GRANDQUEST, Plaintiff,**

v.

**MOBILE PULLEY & MACHINE WORKS, INC., and IPC INDUSTRIES, INC., Defendants.**

**No. 1:00CV00547.**

United States District Court,
S.D. Alabama,
Southern Division.

June 6, 2001.

J. Charles Wilson, Mobile, AL, for Plaintiff.

Paul D. Myrick, Adams & Reese, LLP, for Defendants.

### ORDER

HOWARD, Senior District Judge.

This matter is before the Court on Defendants' Mobile Pulley & Machine Works, Inc., and IPC Industries, Inc. (collectively "Mobile Pulley") Motion for Summary Judgment (Doc. 17). In this action Plaintiff Betty Grandquest ("Grandquest") sued her employer Defendant Mobile Pulley on the grounds of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964. The events leading up to this suit have their basis in a consensual relationship between Grandquest and a co-employee, Michael Guarisco, which took place between June and October of 1997.

Plaintiff has exhausted her administrative remedies as required under Title VII, and filed this suit within 90 days of receiving a right to sue letter from the Equal Employment Opportunity Commission ("E.E.O.C."). Having found no genuine issues of material fact remaining after reviewing the parties' briefs, and for the reasons set forth below, the Defendants' Motion for Summary Judgment is due to be **GRANTED**.

### I. FACTS

The Court's basic findings of fact are as follows. Plaintiff had been employed as a clerical worker with Mobile Pulley since 1976. She engaged in a consensual intimate relationship with co-worker Michael Guarisco, an engineer for Mobile Pulley. Grandquest, who was 41 at the time, was married, Guarisco, 35, was not. The two began socializing at work in June of 1997, having lunches together, gossiping after work and talking by telephone both at

work and at home. Grandquest and Guarisco discussed amongst themselves matters of a personal nature, including the marital problems Grandquest was experiencing at the time.

In late summer 1997, Guarisco attempted to escalate the relationship to a more romantic level, with Grandquest more or less passively following along. This culminated in a one day intimate encounter, which Grandquest described as "a consensual intimate relationship" on October 1, 1997. On this day Grandquest and Guarisco both gave false excuses to take the day off from work. They met at a pre-arranged location, drove to Dauphin Island together and there engaged in light relations of a sexual nature on the beach. Grandquest's husband of 19 years found out about the interlude that same night, after finding a suggestive "sexy" greeting card in his wife's purse. He telephoned Guarisco with his wife on the line and demanded that they have no further contact with each other, a demand to which Guarisco agreed. This affair, as is described more fully, *infra*, caused Plaintiff significant marital problems.

The next day, Guarisco informed his supervisor at Mobile Pulley of the affair, and told Grandquest that he had done so. Mobile Pulley, for its part, took no disciplinary action against either Grandquest or Guarisco. After October 1, 1997, Guarisco intermittently stopped by Grandquest's desk and attempted to make small talk. He asked how she was doing, how things were going at home, how her husband was doing, and generally, how she was dealing with the whole situation. Grandquest took offense at these visits, though at no point were any objectively inappropriate or sexual comments made by Guarisco. Grandquest complained about Guarisco's visits in November to a human resources director, who informed her that he would talk to Guarisco. He did so, telling Guarisco to minimize his contact with Grandquest, and that only business contacts were allowed. A few weeks later, Grandquest was promoted to administrative assistant to the President of Mobile Pulley, Stuart Box.

Later, in December, Guarisco asked Grandquest if she would be attending the company's Christmas party, citing his concern that he would run into Plaintiff's husband, a situation Guarisco told her he wished to avoid. Grandquest then complained a second time to the human resources director, telling him that she wanted absolutely no contact with Guarisco. Guarisco was again told to avoid any unnecessary contact with Grandquest. In February, 1998, Plaintiff reported to Box that Guarisco was continuing to visit her. She reiterated her complaints that he would stop by her desk to ask her how she was doing and how things were at home. Grandquest then demanded that Box make Guarisco stop talking to her altogether. Box did so, and although Guarisco was eventually reassigned to a different part of the building, Guarisco continued to talk periodically to Grandquest.

The conversations continued to be platonic, up until March, 1998, when Guarisco accused Grandquest of having lied to him about the funeral arrangements for the father of a co-worker. Following this verbal spat, Grandquest wrote out a complaint in the form of a memorandum on March 16, 1998, directed to Stuart Box, repeating her complaints and asking him to rectify the situation. Nowhere in this complaint/memorandum did Grandquest mention either sexual harassment or any sexually offensive behavior. In response to her request to have no contact with Guarisco, Grandquest was transferred to Mobile Pulley's parent company, which was housed in a building located approximately two miles distant from her previous job site. She was assigned the job of administrative as-

sistant to the parent company's Vice President of Operations, Steve McKenzie, and received the same rate of pay and benefits.

There her working conditions were virtually identical, save for the fact that she no longer had any contact with Guarisco. Two weeks after her transfer, on April 13, 1998, Grandquest submitted a second written complaint/memorandum, in which, for the first time, she used the phrase "sexual harassment" to describe the affair she conducted with Guarisco. She repeated her complaints about Guarisco's visits, but did not add anything of substance to her accounts which she had previously made concerning Guarisco's attempts to converse with her. Following this, another meeting was arranged with Grandquest and Box, with McKenzie also present. There, Grandquest was given the choice of returning to her old job at Mobile Pulley, after she informed her supervisors that she was bored with her new job, or remaining at the parent company's building in her present capacity. Grandquest chose to return to her original job with the same pay and benefits, though she was aware that the move would increase the chance of contact with Guarisco, who remained stationed in that building.

Following a series of additional warnings to Guarisco, including the threat of termination should he continue to approach Grandquest, Plaintiff had no further contact with Guarisco after April of 1998. According to Grandquest, Guarisco did not do or say anything to her that she deemed objectionable. In October 1998, Grandquest learned that Guarisco had been selected to replace the Chief Engineer, who was to retire effective January 1st, 2000. Although no contact occurred between the two for the next eleven months, Grandquest took it upon herself on September 15, 1999, to write a ten page memorandum entitled "Invasion of Privacy by Michael A. Guarisco," just a few months

before the effective date of Guarisco's promotion. The memorandum was addressed to Vice–President McKenzie, and repeated all of the previous complaints Grandquest had made about Guarisco in her complaints/memorandums of March and April of 1998. She also included a graphic description of the one day tryst which had occurred on October 1, 1997, an account she previously had not chosen to provide. Grandquest did not consider the memorandum to be a complaint; rather she testified that she delivered it so that McKenzie would "know exactly the type person [McKenzie] was going to be putting into a management position" and that she wanted Guarisco to be "punished" and "face the consequences for his actions." *Grandquest Deposition, citation infra.*

Approximately two weeks later, Grandquest was told by Box that she was being reassigned temporarily to a job in the reception area, with no change in pay or benefits, in order that the current receptionist, McKenzie's sister, could be freed up to "catch up" on clerical work in the engineering department. Though she was repeatedly told that the move was only temporary, Grandquest viewed the move as a permanent demotion, and chose to resign rather than accept the job. Both Box and McKenzie attempted to talk Plaintiff out of her decision, telling her that they would hold her resignation for one week to give her the opportunity to think about her decision. Grandquest refused. A few days later, on September 29, 1999, she wrote a letter to the E.E.O.C. alleging sexual harassment and retaliation against her former employer. The E.E.O.C. responded three weeks later, telling her that the agency had not found a violation of Title VII, and would not be moving forward with a lawsuit. Grandquest then filed this suit.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.,* 882 F.2d 993, 996 (5th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *accord Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998 (11th Cir.1992).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson,* 477 U.S. at 251–252, 106 S.Ct. 2505. The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985)).

Once the movant satisfies their initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, as the movant has done in this case, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton,* 965 F.2d at 998 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). "'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton,* 965 F.2d at 999 (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (internal quotation and citation omitted).

## III. DISCUSSION

### A. Grandquest's Sexual Harassment Claim

■ Title VII of the Civil Rights Act of 1964 prohibits employers from discrimi-

# 1344

nating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment can constitute discrimination based on sex for purposes of Title VII. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244–45 (11th Cir.1999) (en banc). Generally, sexual harassment comes in two forms: harassment that does not result in a tangible employment action, often referred to as "hostile work environment" harassment, and harassment that does result in a tangible employment action, often referred to as "quid pro quo" harassment. *See generally Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 760–63, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501 (11th Cir.2000). All harassment by co-workers necessarily falls into the first *Ellerth* class, as co-workers cannot take employment actions against each other. *See Burlington Industries* at 762, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 ("[O]ne co-worker ... cannot dock another's pay, nor can one co-worker demote another. Tangible employment actions fall within the special province of the supervisor.").

To successfully maintain a sexual harassment action under Title VII, a discrimination charge must be filed with the E.E.O.C. within 180 days from the date the alleged harassment occurred. 42 U.S.C. § 2000e–5(e)(1); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). In her deposition testimony, Grandquest admits that Guarisco did not do or say anything she found to be objectionable after mid-April 1998. *Grandquest Deposition of January 19,*

*2001* at (hereafter *"Grandquest at "*), contained within Mobile Pulley's *Brief in Support of Summary Judgment*, Exhibit 1 (Doc. 17) (hereafter *"Def. Sum. Judg. Exh. "*). Her E.E.O.C. charge for sexual harassment was not filed until February 2000, *see Def. Sum. Judg. Exh. 3;* thus, there is no need to explore Plaintiff's time-barred claim for sexual harassment, as even "Grandquest concedes that her claims for sexual harassment are due to go out on summary judgment ..." *Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment*, p. 2, fn 1 (Doc. 23) (hereafter *"Plaintiff's Response "*). Accordingly, and pursuant to local rule 7.2,[1] Plaintiff is by her own admission deemed to admit that there exists no genuine issue as to this dispositive material fact regarding her claim of sexual harassment. The Court will therefore rule in favor of Mobile Pulley on its Motion for Summary Judgment as to Grandquest's sexual harassment claim.

## B. Grandquest's Retaliation Claim

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relationship between the two events. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir.1997) (per curiam). Statutorily protected expression includes filing complaints with the E.E.O.C. and complaining to superiors about sexual harassment. *See, e.g., Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989) ("[T]he protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those ...

---

1. The rule states that "if it is contended that there are material factual disputes, the party opposing the Motion for Summary Judgment shall point out the disputed facts ... [and]

Failure to do so will be considered an admission that no material factual dispute exists." Local Rule 7.2(b), S.D. Ala., (West 2000).

who informally voice complaints to their superiors or who use their employers' internal grievance procedures.").

■■■ A tangible, or adverse employment action has been defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257, 141 L.Ed.2d 633. To establish the third prong of the prima facie case, the causal link requirement, the plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated." *E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571–72 (11th Cir. 1993). The plaintiff must also at least establish that the employer was actually aware of the protected expression at the time the employer took the adverse employment action against the plaintiff. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1524 (11th Cir.1991). Further, once a plaintiff makes out prima facie case of retaliation:

> 'the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action.' If the defendant offers legitimate reasons, the presumption of retaliation disappears. The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct.

*Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999) (quoting *Raney v. Vinson Guard Service*, 120 F.3d 1192, 1196 (11th Cir.1997)) (citation omitted), *cert. denied*, 528 U.S. 966, 120 S.Ct. 402, 145 L.Ed.2d 314 (1999); *E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d at 1571–72; *Goldsmith*, 996 F.2d at 1163 (holding where employer offers legiti-

mate reasons for the employment action, the plaintiff must demonstrate that the employer's proffered explanation is a pretext for retaliation).

Importantly, the Eleventh Circuit has repeatedly held that a defendant may terminate an employee for a good or bad reason without violating federal law. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991); *Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354 (11th Cir.1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision") (quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984)). To determine if Plaintiff raises any genuine issues of material fact with respect to her burden of establishing a prima facie case of retaliation, the Court will first examine whether Grandquest's three written memorandums and oral complaints qualify in this instance as statutorily protected expression.

Title VII's retaliation provisions protect certain kinds of activity. *See, e.g., E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171 (11th Cir.2000). Under the opposition clause, an employer may not retaliate against an employee simply because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3 (a). Under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* The participation clause, however, only covers participation in "an investigation ... under this subchapter," that is, an investigation under subchapter

VI of Chapter 21 of Title 42 (42 U.S.C. §§ 2000e–17). 42 U.S.C. § 2000e–3(a). The clause protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the E.E.O.C.; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the E.E.O.C., See *E.E.O.C. v. Total System Services, Inc.,* 221 F.3d at 1173 (citations omitted). Since no E.E.O.C. complaint had been filed before Grandquest's resignation in September of 1999, *supra,* the Court need not conduct an analysis of any alleged protected expression under the participation clause of Title VII.

■■■ The opposition clause states, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To recover under a retaliation theory, however, the plaintiff "need not prove the underlying claim of discrimination which led to [her] protest;" still, the plaintiff must have had a reasonable good faith belief that the discrimination existed. *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir.1989); *see also Clover v. Total System Services, Inc.,* 176 F.3d 1346 (11th Cir.1999) (requiring a plaintiff to have "good faith, reasonable belief" that she experienced unlawful harassment in order for her expression to constitute protected "opposition" under Title VII) (citation omitted). The subjective belief of a plaintiff that allegedly harassing conduct was unlawful is not enough; rather, to be protected under Title VII her belief must be objectively reasonable, and the "objective

reasonableness of an employee's belief ... must be measured against substantive law." *Id.,* citing *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1388 n. 2 (11th Cir.1998).

■■■ In the case at bar, the Court has grave doubts that any of Guarisco's conduct towards Grandquest, either prior or subsequent to the end of their consensual affair, constitutes anything even approaching sexual harassment under the law of this circuit. If true, and if it can be shown that no individual would have reasonably believed that such conduct constituted objectively unlawful harassment, then as a matter of law Grandquest's retaliation claim against her employer must fail. This is so because Grandquest would have failed to establish the first prong of her prima facie case of retaliation, in that none of her memorandums would qualify as protected opposition or expression, regardless of whether an adverse employment action ever occurred or whether a causal link could be established between said adverse action and any discriminatory animus on the part of her employer. It is helpful at this juncture to examine prior caselaw in this area, as well as the Supreme Court's guidance on the issue as to what constitutes sexual harassment in the workplace.

The Supreme Court has stated:

[T]he statute [Title VII] does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither a sexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment.

*Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1002–03, 140 L.Ed.2d 201 (1998). The conduct in question must therefore be severe or pervasive

enough such that a reasonable person would find it hostile or abusive. *Id.* That requirement is crucial "to ensur[ing] that courts and juries do not mistake ordinary socializing in the workplace—such as ... intersexual flirtation—for discriminatory 'conditions of employment.'" *Id.* at 1003.

In *Succar v. Dade County School Bd.*, 229 F.3d 1343 (11th Cir.2000), the Eleventh Circuit addressed a factual scenario similar to the one presented at bar. In that case, the Defendant–Employer Dade County School Board (the "School Board") hired Plaintiff Joseph Succar as a full-time teacher. In that same year, Succar, who was married, commenced a consensual sexual relationship with Clemencia Lorenz, a fellow teacher. Near the end of the one-year relationship, Lorenz began making threatening overtures towards Succar's wife and son; in response, Succar's wife obtained a restraining order against Lorenz. Thereafter, the relationship between Succar and Lorenz deteriorated rapidly and eventually ended.

Describing the state of affairs subsequent to the end of the teachers' consensual relationship, the court wrote:

> Lorenz's behavior towards Succar following the termination of their relationship was at best acrimonious. She verbally and physically harassed Succar and sought to embarrass him in front of colleagues and students. Succar insists that he did nothing to encourage this behavior and took steps to quell it, including avoiding Lorenz whenever possible and reporting the incidents to the school's principal. Succar maintains that the principal took insufficient steps to remedy the situation, thereby allowing the harassment to continue unabated.

*Id.* at 1345.

After exhausting his administrative remedies, Succar filed a complaint with the district court pursuant to Title VII in which he alleged "hostile work environment" sexual harassment, just as Plaintiff Grandquest has done in this case (in addition to her claim of retaliation). The School Board in *Dade County* subsequently filed a motion for summary judgment, which the district court granted. The Eleventh Circuit affirmed, writing:

> [W]e have observed that 'Title VII prohibits discrimination; it is not a shield against harsh treatment at the work place. Personal animosity is not the equivalent of sex discrimination.... The plaintiff cannot turn a personal feud into a sex discrimination case.' We do not disregard this precept of sexual harassment law simply because the plaintiff and the alleged harassing party had a past sexual relationship. Regardless of the factual context, our analysis focuses only on whether the complaining employee was targeted because of his or her gender.

*Id.*, quoting *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir.1986); *see also Oncale* at 80, 118 S.Ct. at 1002 ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] ... because of ... sex.'"); *DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 306–07 (2d Cir. 1986) (sexual harassment must be "based on a person's sex, not his or her sexual affiliations"); *Huebschen v. Department of Health & Soc. Servs.*, 716 F.2d 1167, 1172 (7th Cir.1983) (no liability for sexual harassment where supervisor's "motivation [for recommending that plaintiff be terminated] was not that [plaintiff] was male, but that he was a former lover who had jilted her").

The Eleventh Circuit in *Dade County* agreed with the lower court's finding that, after viewing the undisputed material facts in the light most favorable to the plaintiff, Lorenz's harassment of Succar was not the result of Plaintiff's gender "but of respons-

es to an individual because of her former intimate place in [that individual's] life." *Succar v. Dade County Sch. Bd.*, 60 F. Supp.2d 1309, 1315 (S.D.Fla.1999) (citation omitted). Thus, *Dade County* stands for the proposition that verified harassment by a co-worker in the workplace, even when rising to the level of animosity experienced by the plaintiff in that case, will not support an action under Title VII if it is shown that the harassment was motivated not by gender, but by a former lover's contempt or anger following their failed relationship. In such a case, the gender of the plaintiff is "merely coincidental." *Dade County*, 229 F.3d at 1345.

Clearly, the case at bar falls within the rule announced by Dade County, though even that case presents a much more egregious fact pattern than the present one. Guarisco's attempts to converse with Grandquest, while perhaps inadvisable, occurred not generally because of her gender, but specifically because of the relationship the two had. It is also noteworthy that at no point in the pleadings does Grandquest ever claim that Guarisco threatened her job, her reputation at work, her well-being, that of her husband, property or two children; indeed, nowhere is it alleged that Guarisco's innocuous and occasional (if foolhardy) visits to Grandquest's desk during work hours ever rose to the level of verbal and physical harassment as experienced by the plaintiff in Dade County. Most importantly, nowhere is it alleged that Guarisco

ever attempted to continue his "romantic"[2] relationship with Grandquest against her will, either by verbally manifesting desire for her, making lewd comments or by touching her or himself in any physical or suggestive way (common species of harassment which often serve as the basis for proving legitimate Title VII claims).

Indeed, Grandquest's own descriptions of Guarisco's impromptu visits illustrate the vacuousness of her harassment claims:

> As you know [a Mobile Pulley supervisor] spoke to M.A.G. [Guarisco] and told him to have no contact with me. On 2 different ocassions [sic] since moving back to [engineering], he has tried to engage in conversation, making derogatory comments about [other co-workers]. This past Friday, 3/13, he stopped at my desk to Fuss at me because I did not call and tell him what arrangements had been made for Ron Bishop's dad's Funeral. Then wanted to know what time I spoke to Ron, told me I couldn't have at that time because that's when he called Ron. I believe something needs to be done to rectify the situation.

*Grandquest Memo of March 16, 1998, (Def.Sum.Judg.Exh. 4)*, pp. 1–2.[3]

Virtually the same description of Guarisco's seemingly innocent (from a Title VII standpoint) conduct is found in Grandquest's handwritten memo to Mobile Pulley President Stuart Box on April 13, 1998:

> I would like to know what action will be taken on my complaint at [Mobile Pul-

---

**2.** The Court uses the term loosely in this case.

**3.** The funeral episode was reiterated, albeit in a starker light, by Grandquest some one and one half years after the incident, in her *Memorandum of September 15, 1999, Def. Sum. Judg. Exh. 7* (written shortly before her resignation):

> The next day Mike Guarisco stopped at my desk on his way to his office. He was very rude to me and started chewing me out for not calling him and telling him the funeral

arrangements before I went home the day before. I told him that … I had given all the information to [a co-worker] to pass along to everyone. He told me I was lying … that he had told me to tell and I didn't. I told him I didn't have to explain anything to him. He then went to his office. The more I thought about this conversation the more upset I got.

*Grandquest Memorandum of September 15, 1999, p. 8.*

ley] against Mike Guarisco. It seems nothing will be done ... Mike Guarisco was told repeatedly ... to have no contact whatsoever with me. He continued to come by my desk to talk. I did not care to listen to his complaints about having to move back to engineering.

*Grandquest Memo of April 13, 1998, (Def.Sum.Judg.Exh. 5 ), p. 1.*

Notably, the above memo is the first, last and only document given to her superiors in which Grandquest ever uses the phrase "sexual harassment." Though a magical incantation of the words is not required to sustain an action under Title VII, it is obvious from the context of the following statement that the "sexual harassment" Grandquest refers to is the consensual romantic relationship itself, and not the events subsequent to its demise on October 1, 1997:

> He [Guarisco] knowing took advantage of me. I was at a very low and vulnerable time in my life. No one knows how I suffered with the Ken Coppage ordeal.[4] That was not just a one time incident ... it went on for approximately 2 years. On top of that I was also having problems in my personal life. Mike Guarisco knew this and as a member of the [Mobile Pulley] management team took advantage of me. He is guilty of sexual harassment in the workplace.

*Id.* at 1.

When questioned about this particular use of the phrase "sexual harassment" in her deposition, and why she had never used the phrase previously, especially in her prior complaint/memorandum written less than one month earlier, Grandquest replied "I just believe it was always that [sexual harassment]. I may not have used those words but I always believed it was that." *Grandquest at 88.*

Upon closer inspection, it is clear that Grandquest was and is pursuing an agenda wholly unrelated to the attempted vindication of any rights she alleges were violated under Title VII. The final statement in her 10 page "Invasion of Privacy" memorandum, written in September of 1999 (one and a half years after ceasing *all* contact with Guarisco), is a good indicator of what this agenda might be:

> I feel that Mike Guarisco took advantage of me when I was in a weak and vulnerable state of mind, which made me easy prey for him. And now he must suffer as I have and pay the consequences for his actions.

*Grandquest Memorandum of September 15, 1999, Def. Sum. Judg. Exh. 7, p. 10.*

Such statements by Grandquest are typical, and are not limited to memoranda given to her supervisors. At one point she even wrote a letter to Guarisco's current (at the time) girlfriend, in which Grandquest 'warned' her that "He [Guarisco] may be using you too. He told me last year when y'all first started dating that he didn't think he should become involved with someone (you) that is so much youn-

---

4. Grandquest refers to a prior incident involving seemingly 'authentic' sexual harassment by a co-worker, Ken Coppedge, who was alleged by Grandquest to have downloaded and displayed pornographic images in the workplace. Coppedge was then terminated as a result of Grandquest's allegations. In a note of irony, the Defendant in this case writes Even though Grandquest does not claim that her complaints about ... [her] other co-workers two or three years earlier ... played any part in any decision affecting her employment, she nevertheless resurrects these complaints without explaining their relevance in this lawsuit. Indeed, the fact that she complained about Mr. Coppage, and that he was subsequently terminated in response to her complaint, simply established that Mobile Pulley seriously enforced its policy prohibiting harassment in the workplace. *Mobile Pulley's Reply to Plaintiff's Opposition to Summary Judgment*, p. 4, fn. 1.

ger than he is. Think about it!" *Grandquest Letter of November 9, 1998, Def. Sum. Judg. Exh. 8.* In a graphic illustration of her experience with Guarisco, written to a woman she apparently had never met nor contacted before, Grandquest writes:

> He is someone that you should not trust. Just over a year ago he sexually harassed me. At the time I did not realize what he was up to but I can now plainly see what he was after all along. Last year [1997] was not a very good year for me personally or on the job. Mike Guarisco took advantage of me when I was in a very weak and vulnerable state of mind. He led me to believe he was my friend when all the while he was only after his own self-gratification. On October 1, 1997 he took me to Bellingrath Gardens and Dauphin Island where he took advantage of me on the beach. He performed oral sex on me and sucked on my breast. My husband discovered what had happened that day and I called Mike Guarisco that same night to tell him that I would no longer be seeing him. I was unable to return to work the remained of that week. My husband now knows all the details.... I have no made contact with Mike Guarisco at all since October 1, 1997. My marriage has suffered tremendously because of his actions. And now it is coming to an end. My husband of 20 years is seeking a divorce. The divorce is being filed on the grounds of adultery and Mike Guarisco will be named in the suit. This is not something that I want but my hus-

band has had a very difficult dealing with this situation.

*Id.*

From the various excerpts above, it is clear that neither Grandquest's memorandums, nor her oral complaints that Guarisco continued to come by her desk and attempt to make small talk with her qualify as statutorily protected expression, because no reasonable person could objectively characterize Guarisco's behavior as "sexual harassment". *See Oncale,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201, *supra.* This is supported by the fact that, in her deposition, Grandquest admits that a significant length of time passed by in which she had no contact with Guarisco, subsequent to when he was threatened with termination (if he did not stop talking to Grandquest):

Q: After you returned to Mobile Pulley, I believe it was on April 23, 1998, does that sound right?

A: Somewhere around that time.

Q: Did you have any work-related dealings with Mr. Guarisco?

A: No.

Q: Did you have any personal conversations with Mr. Guarisco after that date?

A: No.

Q: From April 23, 1998 through September 15, 1999, about a year and a half, you continued to work as an administrative assistant at Mobile Pulley, correct?

A: Yes

*Grandquest at 102–03.*

As Grandquest herself admits, her design in writing the September memorandum [5] was not to inform her superiors of a

---

**5.** The Court here focuses on the memorandum of September 15 because of its proximity in time (two weeks) to Grandquest's proposed temporary transfer to a receptionist position, the allegedly adverse employment action upon which she attempts to rely. As the September memorandum is the only expression or memorandum of her 'problems' with

Guarisco linked even remotely in time to the job transfer, it is the only expression which could even hypothetically serve as the basis for establishing the requisite causal link between a given protected expression and a subsequent adverse employment action (the third prong needed to make a prima facie case of retaliation, *supra* ). As the Court finds

reasonable belief that she was a victim of sexual harassment, rather, she was determined that he would "suffer as I have and pay the consequences for his actions." *Grandquest Memorandum of September 15, 1999, supra.* She explains:

Q: What prompted you to prepare a ten-page memorandum captioned Invasion of Privacy on September 15, 1999?

A: Well, I felt then and I still feel now that he had invaded my privacy.

Q: You told us a moment ago that he had not done anything you found objectionable for a year and a half approximately?

A: (Witness nods head.) ...

Q: Why after a year and a half of Mr. Guarisco not doing or saying anything to you that you found to be objectionable would you deliver this memorandum to Mr. McKenzie [Vice–President of Operations at Mobile Pulley's Parent Company]

A: I wanted him to know exactly the type person he was going to be putting into a management position....

Q: Then what was your purpose in delivering this to the president of the company about Mr. Guarisco when he had not done a single thing to you in a year and a half?

A: I had been punished. He needed— he needed then and he needs now to face the consequences of his actions.

Q: And you wanted him punished in September 1999 for what he had done much earlier, correct?

A: If that's what you want to call it.

*Grandquest at 108–10.*

## IV. CONCLUSION

Grandquest's apparent need to personally exonerate herself from responsibility for her affair with Guarisco,[6] along with her transparent and spiteful attempts to "punish" him after the affair had ended, serve as a poignant reminder that romance and the workplace are almost always incompatible bedfellows. In this case, Grandquest's anger and frustration with Guarisco, while understandable given the marital fallout she experienced as a result of her husband's discovery of the affair, appears nevertheless to have exercised an improper influence over her subsequent decisions vis-a-vis Mobile Pulley and its management team.

Taken in a light most favorable to the plaintiff, the evidence shows that, while Gurarisco did continue to attempt to converse and interact with Grandquest (on some level) between October 1, 1997, and April 23, 1998, at no point did Guarisco conduct himself in a manner that could reasonably, or objectively be construed as sexual harassment. Grandquest does not allege that he threatened her with any workplace reprisals, affected her performance in any relevant way, attempted to make bodily contact with her, or expressed himself in any manner inconsistent with the behavioral standards that Title VII

---

today that neither this memorandum nor any of the other complaint/memorandums written by Grandquest qualify as protected expression, the Court declines to speculate on whether the employment action in which she was transferred from one clerical position to another was adverse for purposes of Title VII.

**6.** "2–years ago ... I was having some personal problems and was in a vulnerable state of mind [and] was taken advantage of by Mike Guarisco" *Grandquest E-mail to co-workers after resignation,* Def. Sum. Judg. Exh. 11 (Doc. 17); *see also* "Mike Guarisco needs to be punished for his actions" *Grandquest Memo of April 13, 1998,* p. 2, Def. Sum. Judg. Exh. 5.

requires to be observed in the workplace. Grandquest's fierce determination to see Guarisco "punished" is a common theme which characterizes virtually all of the memorandums and oral complaints she addressed to her supervisors. Additionally, while not necessarily dispositive in and of itself, it is telling that only once does Grandquest ever use the phrase "sexual harassment," and even then only to describe Guarisco's alleged plot to take advantage of her self-perceived vulnerability by consummating their consensual affair.

As a result, Defendant is entitled to summary judgment on Plaintiff's retaliation claim, based on the Court's finding that Grandquest has failed to establish the first prong required to make out a prima facie case of retaliation; i.e. that she engaged in statutorily protected expression having its genesis in an objectively reasonable belief that she suffered unlawful harassment at the hands of a co-worker. As already stated *supra*, the Court further finds that Grandquest's sexual harassment claim is time-barred, owing to the fact that she failed to file her E.E.O.C. claim within the time allotted under the statute. Accordingly Defendant Mobile Pulley's Motion for Summary Judgment is hereby **GRANTED** in its entirety.