**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

and

**Valerie Moore, Intervenor–Plaintiff.**

v.

**REYNOLDS METALS COMPANY, et al., Defendants.**

No. 3:01–CV–317.

United States District Court,
E.D. Virginia,
Richmond Division.

March 29, 2002.

Suzanne L. Nyfeler, E.E.O.C., Richmond, VA, for plaintiff.

Curtis McKinley Hairston, Jr., The Gee Law Firm, PC, Richmond, VA, for intervenor.

William V. Conley, Lisa L. Steele, Le-Boeuf Lamb Greene & MacRae, L.L.P., Pittsburgh, PA, Michael J. Quinan, Woods, Rogers & Hazlegrove, P.L.C., Richmond, VA, for defendants Reynolds Metals Co.

Mose Lewis III, Powers & Lewis, Washington, DC, James J. Vergara, Jr., Vergara & Associates, Hopewell, VA, for defendant, Local No. 400, United Steel Workers of America International Union.

### MEMORANDUM OPINION

SPENCER, District Judge.

This matter comes before the Court on Reynolds Metals Company and Local No. 400, United Steel Workers of America, International Union's Motions for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed below, Reynolds Metals Company's Motion is GRANTED and Local No. 400, United Steel Workers of America, International Union's Motion is GRANTED.

### I.

Plaintiff Equal Employment Opportunity Commission ("EEOC") and Plaintiff–Intervenor Valerie Moore allege that Defendant Reynolds Metals Company ("Reynolds Metals" or "the Company") discriminated against Ms. Moore on the basis of gender, in violation of Title VII, 42 U.S.C. § 2000e–2(a). The Plaintiffs also allege that Defendant Local No. 400, United Steelworkers of America, International Union ("the Union") engaged in unlawful gender discrimination in violation of Title VII, 42 U.S.C. § 2000e–2(c). Plaintiffs seek equitable relief, compensatory damages and punitive damages.

Ms. Moore was employed by Reynolds Metals from August 24, 1998 to February 9, 2000. Ms. Moore engaged in a consensual sexual affair with another Reynolds Metals employee, Julian Clarke, in October 1998. The affair continued until May 1999.

In September 1999, Mr. Clarke complained to his supervisor that Ms. Moore was harassing him. At an investigative meeting, Ms. Moore also complained that Mr. Clarke was harassing her. Both employees concluded that their former relationship caused their working relationship to become hostile. As a result of this investigative meeting, Reynolds Metals representatives informed the parties that such conduct would not be tolerated, and could lead to their termination. Both were instructed to remain in their separate work areas and avoid contact with each other.

In December 1999, Ms. Moore again complained of two instances of harassment involving Mr. Clarke. In addition, Ms. Moore sought and received a court order requiring Mr. Clarke to avoid further contact with her.

Consequently, Reynolds Metals' management and the Union prepared a Memorandum of Understanding ("MOU") which required Moore and Clarke to remain in their separate work areas. (Reynolds Metals Brief in Supp., Ex. 4.) Further, the MOU stated that violation of the agreement could result in the termination of either employee. *Id.*

On January 20, 2000, Ms. Moore violated the terms of the MOU by leaving her assigned work area on the second floor of the North Plant, and being discovered on the first floor production line. Ms. Moore was subsequently placed on suspension. After an investigation, Ms. Moore's suspension was converted into termination on February 9, 2000. *Id.* at Ex. 5.

Ms. Moore filed a grievance with Reynolds Metals and the Union on the same day. *Id.* at Ex. 6. On March 29, 2000, Moore filed a charge of discrimination with the EEOC. The EEOC later initiated this action pursuant to Title VII, 42 U.S.C. § 2000e–5(f) on May 10, 2001.

## II.

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *Ballinger v. North Carolina Agr.*

*Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). While viewing the facts in such a manner, the Court looks to the affidavits or other specific facts to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). According to the Fourth Circuit,

In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e).... Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes.

*Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) (emphasis original). Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. However, if a motion for summary judgment is "properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on mere allegations or denials of the pleadings ... [but] must respond by affidavits or otherwise and present specific facts demonstrating a triable genuine issue of material fact." *Garrett v. Gilmore,* 926 F.Supp. 554, 555 (W.D.Va.1996), *aff'd,* 103 F.3d 117, 1996 WL 667765 (4th Cir.1996).

## III.

Plaintiffs allege that Reynolds Metals and the Union are jointly liable for the

alleged sexual harassment suffered by Moore. Plaintiffs' arguments against each Defendant will be addressed in turn.

### Claims against Reynolds Metals

A. Hostile Work Environment

█ Title VII of the Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). "Sexual harassment," as defined by the EEOC, is a recognized form of gender discrimination prohibited under Title VII. See Meritor Sav. Bank, F.S.B. v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Traditionally, allegations of sexual harassment take one of two forms: (1) quid pro quo harassment, which "makes employment benefits contingent upon sexual cooperation," or (2) hostile work environment, which "substantially affects a term or condition of employment." See EMPLOYMENT DISCRIMINATION LAW 746 (Barbara Lindemann & Paul Grossman eds., 3rd ed.1996); cf. Hartsell v. Duplex Products, Inc., 123 F.3d 766, 771 n. 3 (4th Cir.1997).

█ The Fourth Circuit has recognized four factors to determine whether the defendant has actually created a hostile work environment; these include whether (1) the individual was harassed because of her gender; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive so to establish an abusive environment; and (4) some basis exists for imputing liability on the employer. Id. at 772. See also EEOC v. R & R

Ventures, 244 F.3d 334, 338 (4th Cir.2001). In light of these factors, a plaintiff must prove that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

1. *Gender Motivated Harassment*

█ Defendant Reynolds Metals argues only that the Plaintiffs fail the first of the four-factor test—that Ms. Moore was harassed because of her gender. (Reynolds Metals Brief in Supp. at 8.) The Fourth Circuit holds that a claimant is harassed "because of" her sex when "but for" her sex, she would not have suffered the discrimination. Wrightson v. Pizza Hut of America, 99 F.3d 138, 142 (4th Cir.1996). Reynolds Metals argues that if any harassing conduct took place, it was motivated by the cessation of the prior consensual relationship, and not Moore's gender. (Reynolds Metals Brief in Supp. at 10.)

█ "When the complained of conduct takes place between two employees who had previously engaged in a consensual affair, a plaintiff cannot convert simple personal animosity into an actionable claim under Title VII." (Reynolds Metals Brief in Supp. at 10) (citing Succar v. Dade County School Bd., 229 F.3d 1343, 1345 (11th Cir.2000)) (holding that gender was "merely coincidental"); Huebschen v. Dep't of Health & Social Servs., 716 F.2d 1167 (7th Cir.1983) (finding that prior relationship was basis for treatment). Conduct specifically cited by the Defendant, including use of profanity, name-calling,[1] leaving notes on her car, taking her personal property, grabbing, and closing

---

1. Plaintiffs argue that Clarke's comments to Moore, including calling her a "whore" and "slut" bring his behavior within the ambit of Title VII. However, the Court finds that the sexual nature of comments, considered in the context of a failed relationship, were motivated out of the end of the affair, rather than by Moore's gender.

doors on Moore, flowed from Clarke's failed relationship with Moore. As the Eastern District of Virginia has recently held, "[t]here is a significant distinction between harassment that is sexual in content and harassment that is sexually motivated, and Title VII is only concerned with the latter." *English v. Pohanka of Chantilly, Inc.*, 190 F.Supp.2d 833, 840 (E.D.Va. 2002) (unpublished).

■ The Supreme Court of the United States has repeatedly cautioned that Title VII should not be stretched to become a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). The Fourth Circuit has held, however, that "that in prohibiting sex discrimination solely on the basis of whether the employee is a man or a woman, Title VII does not reach discrimination based on other reasons, such as the employee's sexual behavior, prudery, or vulnerability." *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 751 (4th Cir.1996). Further, it is clear that "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." *Id.* at 754.

Based on the record before the Court, Plaintiffs have failed to show that Clarke's behavior was motivated by Moore's gender. Given that the circumstances described by the parties derived primarily from animus relating to a past relationship, the gender of the Plaintiff did not trigger the behavior. This is not to say, however, that a prior relationship precludes application of Title VII in all circumstances.

## B. Retaliation

Title VII further provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by the [title], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]." 42 U.S.C. § 2000e–3(a). Plaintiffs assert that the suspension and subsequent termination of Ms. Moore constituted retaliation under Title VII. (Compl.¶¶ 16, 17.)

■ To prove a prima facie case of retaliation, Plaintiffs must show that (1) Ms. Moore engaged in a protected activity; (2) the Company took an adverse employment action against her; and (3) there exists a causal connection between the adverse employment action and the protected activity. *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir.2001). If Plaintiffs satisfy this burden, the burden then shifts to Reynolds Metals to present a legitimate, non-discriminatory reason for taking the adverse employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If, in turn, Defendant satisfies this burden, then Plaintiffs may then prove by a preponderance of the evidence that the reasons proffered were pretext. *Id.*

### 1. Prima Facie Claim of Retaliation

■ The requirements of the prima facie claim of retaliation are satisfied by the Plaintiffs. First, Plaintiffs argue that filing complaints with the EEOC and complaining to superiors regarding harassment are protected activities. In support of this contention, Moore relies upon the Southern District of Alaska's decision in *Grandquest v. Mobile Pulley & Machine Works*, 163 F.Supp.2d 1338 1344 (S.D.Ala.). Like the Southern District of Alaska, the Fourth Circuit also recognizes these as protected activities under the opposition clause in § 704(a) of Title VII. *See Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir.1981). Therefore, Plaintiffs

satisfy the first prong of the prima facie claim.

■ As to the second prong, Plaintiffs argue that Reynolds Metals imposed two adverse employment actions, including (1) the imposition of the MOU, and (2) the ultimate termination. An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

■ The MOU is not an adverse employment action, since "trivial discomforts endemic to employment," are insufficient. *See Murray v. Dillard Paper Co.*, 1999 U.S.Dist. LEXIS 22631, *28 (E.D.Va.1999) (citing *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir.1999)). The MOU required Moore to use a locker located in a different location than the one she previously used, and restricted her movement within the plant. Locker reassignment, without more, simply does not qualify as an adverse employment action because it does not significantly change Moore's employment status. In terms of restricting Moore's movement, both Moore and Clarke were limited to working in their work areas. The work areas were defined according to the positions they held. Moore was never denied access to the common areas of the plant. Moore never alleges that the MOU resulted in her having different job responsibilities, nor does she claim that her job-related benefits were reduced. Accordingly, the imposition of the MOU is not actionable under a retaliation theory.

Moore's discharge, however, is clearly an adverse employment action. Defendants do not challenge this point.

■ Considering the final prong, the Fourth Circuit requires little evidence for a showing of a causal connection between the complaint and the adverse employment action. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir.1998) ("Normally, very little evidence of a causal connection is required to establish a prima facia case...."). Indeed, the Fourth Circuit has held that "merely the closeness in time between the [protected activity] and an employer's firing is sufficient to make a prima facia case of causality." *Tinsley*, 155 F.3d at 443 (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). In the case at bar, Moore filed a complaint in December, 1999, and Reynolds Metals imposed the MOU on January 10, 2000, suspended Moore on January 18, 2000, and terminated Moore on February 9, 2000. The proximity of these events leads to a conclusion that the Plaintiffs satisfy a prima facie claim of retaliation based on her discharge.

2. Legitimate, Nondiscriminatory Reason for the Termination

■ Defendant Reynolds Metals asserts that Plaintiffs do not satisfy the preliminary burden of establishing a prima facie case of retaliation; but even so, Reynolds Metals asserts that Ms. Moore's violation of the MOU agreement is "a legitimate, nondiscriminatory reason for her suspension and discharge." (Reynolds Metals Brief in Supp. at 13.) In support of this defense, Reynolds Metals cites the recent case of *Mays v. City School Bd. for the City of Lynchburg, Va.*, 5 Fed.Appx. 181 (4th Cir.2001). In *Mays*, the employer instructed two employees to stay away from one another. *Id.* at 182. The two violated the directive and subsequently a physical altercation ensued. *Id.* Because of the violation, both employees were discharged. *Id.* The court found that the violation of the employer's directive was a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Id.* at 183.

Similarly, in the present case, Moore was terminated for violating the MOU. She left her restricted work area and entered an area where Clarke was nearby. Accordingly, Defendants' reason for terminating Moore was legitimate. The burden now shifts to Plaintiffs to demonstrate that the offered reason is pretext.

### 3. Pretext

Plaintiffs respond that a plaintiff may establish a retaliation claim where a retaliatory motive "is not the sole cause of the adverse employment action, or when there were other objectively valid grounds for a discharge." *Raniola v. Bratton*, 243 F.3d 610, 625 (2nd Cir.2001) (citations omitted). Plaintiffs argue that a jury may reasonably conclude that (1) the adverse employment actions were causally connected to the complaints, and (2) the proffered reason for the discharge (Moore's violation of the MOU) was a pretext for discrimination. (Brief in Opp'n to Reynolds Metals Mot. at 24.)

In support of these claims, Plaintiffs point to three "instances of discriminatory treatment." (Brief in Opp'n to Reynolds Metals Mot. at 25.) The first such instance, according to the Plaintiffs, arises from the allegation that other employees were punished "less severely" for similar offenses. (Brief in Opp'n to Reynolds Metals Mot. at 25.) Plaintiffs place particular significance upon the fact that Reynolds Metals knew Clarke received a criminal conviction for assaulting Moore on Company property, yet took no disciplinary action against him. (Brief in Opp'n to Reynolds Metals Mot. at 25.)

Plaintiffs also claim that the MOU provides evidence of discrimination, as it "imposed more significant restrictions on Moore and affected her much more harshly than it affected Clarke." (Brief in Opp'n to Reynolds Metals Mot. at 26.) While Clarke was permitted to use the entire facility, the MOU allegedly restricted Moore to the second floor.

Third, Plaintiffs claim that the "strict enforcement" of the MOU was retaliatory and demonstrated discriminatory animus. (Brief in Opp'n to Reynolds Metals Mot. at 27.) Moore was terminated for being outside of her restricted area, while Clarke remained unpunished for being near Moore's work area. There is no allegation that Moore had contact with Clarke, approached him, or left her work area in order to have a confrontation with him. Moreover, despite the existence of at least six incidents involving accusations of harassment during the human resources manager's tenure, Moore was the only individual that was terminated.

A plaintiff may show that an employer's proffered reasons for termination were pretext by providing sufficient evidence that the employer's reasons were false, and the plaintiff's gender was the real reason for the termination. *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir.2001). "[A] plaintiffs own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir.2000).

In the present case, Plaintiffs make arguments regarding the Company's allegedly true motive in discharging Moore, but they fail to provide evidence that Moore's gender was the real reason for her termination.[2] They do not offer

---

**2.** Despite Moore's post-termination claim that she did not violate the MOU, it is not the perception of the employee that forms the basis of the Court's evaluation of whether the employer's articulated reason for terminating that employee is false, but rather the perception of the employer at the time the adverse

evidence that others similarly situated to Moore were treated more favorably than she was. They do not offer evidence that the MOU was imposed more strictly on Moore than it was on Clarke.[3] Finally, Plaintiffs' claim that because others were not terminated for more serious transgression the Company's discriminatory intent is revealed, contradicts the very evidence Plaintiffs do actually offer. Plaintiffs claim that "Lois White and Stanley Bowser were involved in a dispute. Bowser alleged that White used her car to cut him off in a parking lot and then brandished a gun. Despite the seriousness of such an accusation, **White** was suspended and allowed to return to work." (Mem. in Opp'n to Reynolds Metals Mot. at 25) (emphasis added). White was a woman who was allowed to return to work, despite her actions. This evidence supports the Company's claim that its decision to terminate Moore was not because of her gender.

It is not the Court's duty to second guess the propriety of an employer's legitimate, nondiscriminatory reason for terminating an employee, as long as the proffered reason is not false. *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir.1998). Plaintiffs fail to produce evidence that the Company's articulated reason for firing Moore is false. Accordingly, regardless of whether the Company's employment decision was "wise, fair, or even correct ... so long as it truly was the reason for [Moore's] termination," Plaintiffs' Title VII claim must fail.

employment action was taken. *See DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.").

### Claims against the Union

Plaintiffs also claim that the Union is liable under Title VII for gender discrimination. The Union disclaims any liability for the conduct of Reynolds Metals employees and the decisions of the Company.

Liability under Title VII applies to labor organizations. *See Donnell v. General Motors Corp.*, 576 F.2d 1292, 1300 (8th Cir.1978). Title VII provides:

It shall be an unlawful employment practice for a labor organization—(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin; (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e–2(c). To establish a Title VII sex discrimination claim against a union, an employee must show that: (1) the employer violated the collective bargaining agreement ("CBA") with respect to the employee; (2) the union breached its duty of fair representation by allowing the breach to go unrepaired; and (3) there is some evidence of gender animus among

**3.** Plaintiffs note that at some point Clarke was near Moore's work area. However, Plaintiffs do not indicate whether Clarke actually violated the MOU, or whether this incident occurred before or after the imposition of the MOU.

the union. *Greenslade v. Chicago Sun–Times, Inc.,* 112 F.3d 853, 866 (7th Cir. 1997).

The CBA contains a provision which states that "The Company and the Union agree to comply with all statutory laws regarding nondiscrimination and not to discriminate against any employee because of ... sex ... in all matters pertaining to hiring, wages, hours, and working conditions." (Mem. in Opp'n to Union's Mot. at 22.) Plaintiffs allege that Reynolds Metals breached the CBA by subjecting Moore to a hostile work environment because of her gender, disparately treating her, and retaliating against her for complaining about the alleged discrimination. In order to satisfy the first prong of the standard articulated in *Greenslade,* a plaintiff must advance a prima facie case of discrimination against the employer. As discussed earlier in this memorandum, Plaintiffs fail to establish a prima facie case of discrimination based on hostile work environment. Instead, Plaintiffs must rely on the Company's alleged retaliation as the source of the CBA breach. As previously addressed, Plaintiffs satisfy this requirement.

Plaintiffs must then show that the Union allowed the Company's breach to go unrepaired. In essence, Plaintiffs must show that the Union breached its duty of fair representation. "A union breaches its duty of fair representation when its decision not to pursue a grievance is arbitrary or based on discriminatory or bad faith motives." *Greenslade,* 112 F.3d at 867.

The only relevant issues are whether Moore's termination gives rise to a colorable claim of gender discrimination, and whether the Union acquiesced in the discriminatory conduct. *See Romero v. Union Pacific R.R.,* 615 F.2d 1303, 1311 (10th Cir.1980). Plaintiffs claim that by endorsing the MOU, which disfavored Moore, the Union failed to properly represent Moore. They also contend that the

Union failed to fully process Moore's grievance. While Plaintiffs arguments might have some merit, the Court need not decide whether the Union acquiesced in discrimination when it endorsed the MOU or decided not to arbitrate Moore's claims, because Plaintiffs completely fail to satisfy the third prong of *Greenslade* —that there is evidence of gender animus among the Union.

Plaintiffs provide no evidence, whatsoever, that the Union was motivated out of animus towards women. Plaintiffs merely claim that "[i]n the light most favorable to Moore, the evidence is sufficient to show that Moore's gender played a role in the Union's collaboration with Defendant Reynolds unlawful discrimination and had a determinative influence on the outcome." (Mem. in Opp'n to Union's Mot. at 28.) However, Plaintiffs miss the point. Plaintiffs must bring forth evidence of the Union's gender animus in order to make out its Title VII case against the Union. The issue does not even get to a jury if Plaintiffs fail to meet their burden. Here, there is no evidence of Union animus. In fact, it is undisputed that after Moore was terminated, the Union filed a grievance claiming that the discharge was "too harsh of a penalty for Ms. Moore." (Union's Mem. in Supp., Ex. 8.) The Union argued that there was a misunderstanding about the limits of the work areas where Moore could go pursuant to the MOU. *Id.* The grievance was denied. *Id.*

## IV.

For the foregoing reasons, Defendant Reynolds Metals Company's Motion for Summary Judgment is GRANTED. Local No. 400, United Steel Workers of America, International Union's Motion for Summary Judgment is GRANTED.